THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* DOMINGO ACEVEDO VERA, Defendant and Appellant.

No. 13991.   Argued November 10, 1949.—Decided November 21, 1949.

*Santiago Polanco Abréu* for appellant.   *Vicente Géigel Polanco, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court* and *Fernando Fornaris, Jr., Assistant Fiscal,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The defendant was accused of having in his possession a book of numbers and letters which are and can be used for

the unlawful game of *bolita*, in violation of § 4 of Act No. 220, Laws of Puerto Rico, 1948.[1] He was convicted and sentenced to six months in jail. On appeal, the first assignment is that the proof was not sufficient to sustain the charge.

■ The testimony offered by the government was that several detectives searched the house of the defendant pursuant to a search warrant; that the defendant operated a dry goods store in one of the rooms of his house; that under a showcase in the said room the detectives found a gray notebook entitled "Order Book"; that several pages of this book were devoted to lists of current accounts and delinquent accounts for merchandise, but that the book also contained the following:

```
"077    —    200
 078    —    150
 110    —    100
 109    —   1840
 565    —    400
 566    —    250
Series  —   3.00 P
Series  —   1.00 P
           _____
           33.40"
```

There was also testimony that the latter numbers and the words "serie" or "series" were used to play *bolita*, as *bolita* is played by betting on the numbers from 000 to 999, keyed to the last three numbers of the Lotteries of Puerto Rico and Santo Domingo; and that "serie" means the enumeration of three figures or digits of the clandestine lottery.

---

[1] Section 4 reads in part as follows:

"Any person caught carrying or transporting or who has in his possession for any reason any *papeleta*, *billete*, ticket, notebook, list of numbers or letters, slips, or implements which can be used for the unlawful games of *bolita*, *bolipul*, combinations connected with the pools or *bancas* of the racetracks of Puerto Rico, and clandestine lotteries, and any person who possesses, sells, or in any way transports these or any other similar ones which may be utilized or used in said unlawful games or connected with the practice thereof, shall be guilty of a public offense. . ."

The detectives also testified that the defendant had admitted that the book was his, that he had been a *bolitero*, and that the said numbers were old bolipool numbers.

The defendant testified that the book was his property, but was for his business and had no relation with *bolita*. On cross-examination, he testified that "077–200" meant 77 yards of cloth and 200 meant 200 yards or 2 dollars, but he could not explain why he put zeros in the figures 078 and 077; that "P" meant pair, or "any other thing" and finally he said that "he made those numbers in that way in a crazy manner, without knowing what they meant, without any meaning".

We think the record contains evidence sufficient to sustain the conviction. The defendant admitted possession and ownership of the book. Although he subsequently repudiated it and at the trial gave a fantastic explanation of the figures quoted above, the record likewise contains an admission by the defendant that these figures were *bolita* numbers. It is true he qualified this statement by characterizing them as "old" bolita numbers. But escape from the impact of § 4 is not that easy. The admissions of the defendant, together with the testimony of the detectives which demonstrated that these figures "could" be used to play *bolita*, was enough to spell out a violation of § 4. We find nothing in § 4 which requires that the materials must be possessed for use in a *prospective bolita* game. On the contrary, as we held in *People* v. *De Jesús, ante*, p. 36, 40–41, possession of materials which *have been* utilized or are being utilized to play *bolita* constitutes a violation of § 4.

■ The second assignment is that the lower court erred in overruling the motion for suppression of evidence seized as a result of the search of the defendant's premises. The defendant did not move for suppression of the evidence prior to trial and did not object to its admission at the trial. He made his motion for the first time at the close of the testi-

mony offered by the defense. His motion was therefore too late and could not be considered as it did not fall within the exceptions laid down in *People* v. *Nieves*, 67 P.R.R. 283.

The judgment of the district court will be affirmed.

